Our third case is number 22-12687, Joel Rothman et al. v. A Shoc Beverage, LLC, is interested parties. Mr. Dial. Yes, thank you, your honors. Avery Dial on behalf of the appellants. I'm joined by my client, Joel Rothman, who's also put in an appearance in this case. He's an LLC droves. What happened in this case is that Mr. Rothman was sanctioned under 28 U.S.C. 1927. The sanction came upon a motion for sanctions that sought three bases for sanctions. One of those was the court's inherent power. Another one was the exceptional case standard of the Lanham Act, and the 1927 was almost an afterthought and a footnote. The motion itself makes allegations about what Mr. Rothman's client did at the time, and that was Celsius. Celsius did X, Celsius did Y. Celsius did X, Celsius did Y. In the first appeal that not what it's called. Just because the motion mentions 1927, this didn't put Mr. Rothman on notice. Even if the motion itself did not, isn't it pretty clear by the time of the hearing before the district court that Mr. Rothman and the other lawyers know that they are potentially on the hook for sanctions? At that point, given the fact that the motion itself made no allegations against the actual attorneys or delineate the attorney's behavior, then I would say no. For instance, doesn't, maybe I misremember the transcript, but didn't Mr. Rothman at some point tell the district court that he was potentially on the hook for sanctions, that that was what was at stake? Doesn't he say that to the district court? He does say that, Your Honor. Then how could you not be aware of, that doesn't go away from your argument about the motion not providing notice and the like, but I just want to see if we can narrow the issue. It seems to me that by the time of that hearing, the attorneys, including Mr. Rothman, knew that they were targets of the sanctions motion, or am I just missing that? Well, Mr. Rothman did mention that at the hearing. However, it is reasonable for Mr. Rothman not to think that that is actually going to happen because there have been no allegations about his actual behavior raised by either counsel or the court about his behavior specifically. And as an example... In that vein though, counsel, so Mr. Rothman put together a complaint that at the end of the day was citations to information and studies that some would say clearly undercut the plaintiff's claims. How is that not part of Mr. Rothman's responsibility? Or said another way, how much research should he have done independently even though the complaint was largely based on scientific data? So while the defendants argued that the scientific study cited in the complaint undermined the plaintiff's claims, this is not the case. So the studies cited, all the studies cited in the complaint, studied the Celsius formula as a whole. The entire formula combined. And Celsius has different ingredients than Ashok. So when Ashok... Let me clarify because if I understand Mr. Rothman's position, it's that all of the information that he got from Celsius, it was reasonable for him to rely upon that without doing any independent research. And therefore he can't be liable for what the district court found to be essentially a frivolous lawsuit. And I'm asking you, is that a correct... How can that be when lawyers do have some responsibility to make sure that there's some validity to the claims that are being asserted? Your Honor, I believe it is reasonable to rely upon your client's data, especially where it is technical and scientific data. And I think even more important here is that 1927 sanctions should not be awarded based on the initiation of proceedings, only the multiplication of proceedings. So if we're looking at what's in the complaint, the claims that are brought forth in the complaint, then that's not a proper basis for 1927 sanctions. Now, let's turn then to discovery. The district court found that Mr. Rothman's or the law firm's client, Celsius, failed to meaningfully participate in discovery, produced zero documents with weeks to go in the discovery period, did not answer a single admission request, and didn't answer a single interrogatory. If all of that is correct, how does that not multiply proceedings? How is that not vexatious conduct? Your Honor, the objections were well founded. Every single one of them? I mean, it's one thing, and I know you weren't the lawyer below, so I'm not trying to transpose responsibility, but lawyers litigate and they litigate hard. And they file objections when they think there's a basis to file an objection. And sometimes those objections are close to the line, sometimes they're not, etc. Okay, got it. But in a case like this, you got to produce some documents, you got to answer some requests for admissions, you have to answer some interrogatories that are not objectionable, and some of them were pretty vanilla. How do you not provide any discovery whatsoever and escape sanctions, I guess is my question. Your Honor, my client and Ashok were undergoing multiple meet and confers, some of the responses were to be amended, and Ashok prematurely filed motion to compel. But I would like to come back to the fact that, for instance, the objections to the request for the request to produce were well founded. And I know that it may appear that this is odd because the objection was the same for many of the same requests for production. Or identical. Correct, however. Same for the interrogatories and same for a lot of the requests for admissions too. However, Your Honor, I think the term boilerplate or cookie cutter was used, but I don't think that has to necessarily be a derogatory term. As your colleague Andrew Kleinfeld on the Ninth Circuit posed to someone seeking sanctions in a 1927 oral argument, what's wrong with cookie cutter complaints if they're addressing cookie cutter wrongs? So if each of those objections, if each of those discovery requests was objectionable. Wasn't Celsius asked, for example, to admit that a certain image correctly portrayed the image of a certain energy drink in the market? I think that that's highly objectionable. No, no, no. My question was not a legal one. It's a factual one. Wasn't Celsius asked to admit that a certain image of an energy drink was what that energy drink was portrayed to in terms of its can appearance, trade dress, and everything? Yes. Why in the world would you object to that? Your Honor, that would be like me asking me to admit that Mr. Hogan's firm logo is this, showing me a picture of Mr. Hogan's firm logo and asking me if this is the same logo they use in the marketplace today. I'm not, I'm not, I'm not wrong with that. I'm not suited to answer that question. And then also it's not relevant to the claims or defenses in the case. Now, say the request for admission asked, did you copy this can to demonstrate that this is, this is trade dress that you've taken from the marketplace? And that's a relevant question now, but asking me to say, is this the XYZ can? Well, let's say that there was some abuse in the discovery process. And the question is who is responsible for that abuse? And as lawyers, it is reasonable that you would ask your client, you would show them the discovery, ask for their input, sometimes even fill it in to the extent they can. Why isn't Mr. Rothman at least responsible for some of the responses that really didn't require any scientific knowledge or just an affirmation as Judge Jordan, I think is alluding to of accessible. What is your position as to why Mr. Rothman shouldn't be responsible for any behavior related to the discovery process? May I respond your honor? I'm a take all the time you need. Okay. The, the reason why is that the, the order doesn't support it. The order needed to make factual findings about Mr. Rothman's behavior. The court failed to do that. The motion, the plaintiff, excuse me, the plea presented no evidence. Their fee motion was not verified as is required under the local rule. And there are no specific findings about what my client did. Unlike for instance, Judge Jordan in a case called a Rinsden that you decided when you were a district court judge, you made very specific findings about what the lawyers did. And Judge Brashear, there's the Peer case where you know that there's a high bar to sanction an attorney. And in that case, you distinguish what the client did versus what the lawyer did. But, and we'll, we'll close with this and we'll obviously give you your time for rebuttal. But for example, one of the requests for productions ask for documents that Celsius contends supports his claims against Ashok. Now taken in its most broad form, maybe that's overbroad. Maybe it's partly oppressive, but there are some documents that it's clear have to be why, why was nothing turned over? And, and how can that be laid at the feet of anyone else but the lawyer? If you're a lawyer, you say, okay, let me see the universe of documents that support our claim. And then you decide as a lawyer, talk to your client, see if anything is protected by privilege, see if anything is protected by work product, see what's oppressive, see what's too and what you turn over. Why wouldn't you turn something over? My view of this case would be very, very different. If there were some limited interrogatory responses, if there were some limited document production, and if there were some limited answers to request for admissions, but on each one of those, you have zero, zero and zero. And that paints a whole different perspective when you're reviewing an abuse of discretion standard. There's only my perspective. I don't mean to speak for my colleagues. You can respond if you'd like. Um, understood your honor. Um, again, the objections were well-founded and there, and there was never a determination as to whether or not they were going to be sustained or overruled. And I would, but that's because the complaint got dismissed before the hearing. Understood your honor. Um, but again, that would have been given a, a full hearing before the magistrate examining each one in its context and allowing Mr. Rothman to argue, uh, the point for each one. And I, I'd like to address that abuse of discretion standard also. Um, you know, it's, it's our position that, um, this should be subject to de novo review because of the due process issues. And I would also like to say that while questions of law are always reviewed de novo, that here where there is no evidence in the order or in the record as to what Mr. Rothman himself did wrong, that I think the result is the same. All right, Mr. Dow. Thank you very much. We'll give you your full five minutes for rebuttal. Mr. Hogan. Thank you, your honor. And may it please the court. My name is Howard Hogan with the law firm of Gibson Dunn and Crutcher. I'm here with my co-counsel, Kevin Kaplan of the coffee Burlington firm on behalf of the appellee, a shock and Keurig, Dr. Pepper. Um, I I'd like to open by making clear what this case was really about. This was not some disadvantaged plaintiff trying to test an innovative theory of the law. This was the leading energy beverage in the marketplace, trying to quash a new competitor, knowing that a lawsuit hanging over the head of this product would make it hard to get into stores and on shelves at a critical time. Plaintiff knowing they had the burden of proof, asked the court to use its power to enjoin that product. And knowing that plaintiff's counsel, knowing that they had that burden of proof, as your honor pointed out, didn't produce a single document and refused to answer an interrogatory that asked it to identify evidence that supported clear factual allegations of the complaint that was levied against Celsius, the plaintiff. I do read right now the district court's order as kind of conflating Celsius's behavior with Mr. Rothman's behavior. And then Mr. Rothman is the only one who gets a monetary sanction. So where can you point me in the record that clearly from the district court's perspective identifies what Mr. Rothman did? Thank you, your honor. And I would, point to the order setting the hearing, specifically. That's at docket entry 61 below and document 33-9 on this court's docket. And it was entered before the hearing. And in the order, it's a three-page order, Judge Middlebrooks not only sets the hearing, he describes specifically what we called sanctionable conduct. And each item listed is clearly things done by the lawyer. The filing and signing of the complaint done by the lawyer. The trade dress consisting of functional conventions that can't be trademarked as a matter of law. That is something that the lawyer was responsible for. Refusing to produce a single document, answer a single interrogatory, answer almost all requests for admission, that is the lawyer. That's not something that client Celsius did. But what we don't know is the conversation because they're protected by attorney-client privilege that Mr. Rothman had or might have had with Celsius that could explain that behavior. But isn't he a little bit hamstrung here in terms of presenting a full defense when the attorney-client privilege prevents him from that full disclosure? Thank you, your honor. He could easily have provided evidence that supported that. And I just want to wrap up my discussion of the court's order because Mr. Rothman received an engraved invitation if he believed Celsius was at fault to enter evidence. The court said in the order right above setting the date and time, plainly an attorney threatened with sanctions under section 1927 is entitled to a hearing and he cited the Amlong and Amlong versus Denny's case, which is both parties agree the controlling case in this area of the law. So Mr. Rothman was clearly on notice. He had notice and he had a hearing, an opportunity to be heard. He did not submit a sworn declaration from himself or Celsius making any of the points that your honor raised. He did not call a witness. We even emailed Mr. Rothman before the hearing asking him if he was going to bring witnesses so that we could prepare. He didn't respond. And then at the hearing, if you look at the transcript, when Mr. Rothman opens, he doesn't introduce any evidence whatsoever. He says, I'm tempted to ask your honor if you have any questions for me. So Mr. Rothman could have, for example, entered evidence to explain why the case was withdrawn when it was. He didn't choose to enter any such evidence. He could have provided some of the evidence we'd asked for to support the case. And just to make a quick point in response to this argument that the merits are somehow irrelevant to the case, in the Amlong and Amlong versus Denny's case, this court has held that it is sanctionable conduct for a lawyer not to withdraw once it becomes clear that there is no road paved with truth that could lead to judgment for the plaintiff. And whether or not we were going to win on the motion to dismiss, that motion to dismiss and all of the subsequent evidence painted a very clear picture that there was no road paved with truth that would lead to judgment on the merits in this case. I've got sort of just a legal question about the standard. So we're looking at multiplication of proceedings, right? In almost all of the cases that I've seen where sanctions have been affirmed, the lawyer has done something leading to hearings, courts have had to be involved, motions to compel were issued, and motions to compel were denied. You know, here I get from your perspective, you had to answer the complaint with a motion and you had to file motions to compel, but doesn't the fact that he just dropped the lawsuit suggest he's not multiplying proceedings? Well, a few things, your honor, in response to that. First of all, he didn't produce a single document on his side, but he was complaining about defendant's production. Defendants produced thousands of documents and were receiving letters. He also didn't disclose that he was not planning to produce a single document. As Mr. Rothman said in the hearing before the district judge, we engaged in meet and confer sessions that were hours long over a number of days. That would have been unnecessary if he was going to disclose that he just, you know, he didn't have any documents he was ever going to produce. Well, I mean, you're just sort of assuming that this is all sort of a diabolical plan to file a lawsuit and then there was never going to be documents produced. It was always going to be dismissed. I guess my point is, under the statute, just look at it from the sort of statutory interpretation question, what did he do to multiply the proceedings? Well, as the district court found in its discretion, it was a combination of once the motion to dismiss made it clear that there was no road for success paved with truth. All of the gamesmanship in discovery, the letters, long, detailed, single-spaced letters that we wrote pointing out the problems with their discovery responses and then forcing us to bring motions, two motions to compel with respect to the document productions, the request for admission, and the interrogatories. And we took the judge's order, says that it is the responsibility of the attorneys to keep the case moving forward and to keep to the schedule that was ordered. We tried to do that. So we produced detailed expert reports. We had professors from world-renowned universities looking at this issue and we produced those on time even though plaintiff produced expert reports that were nothing more than proposals for future work. There was a survey expert that hadn't done a survey and we had 30 days to depose that expert. There was an expert on the law, which I'm not sure was admissible anyway, but proposed to do a survey of literature to confirm his view of what the FDA regulations require, which, you know, in my view would have been irrelevant anyway. But all of this required an immense amount of legal work. We prepared detailed accounts, hours spent on these specific tasks, and the district court reviewed those and found that they were all reasonably related to the excess proceedings caused by plaintiff's counsel's misconduct. Putting aside the discovery for a moment, what overlap is there between Section 1927 and Rule 11? There's certainly overlap. We did not move under Rule 11 because we had not... No, but part of the district court's reasoning is you filed a complaint that in large respects was baseless, right? You filed one claim where only the U.S. had standing to sue under the FDCA, um, your own studies contradicted much of your factual claims, etc. So there's a, there's an element of Rule 11, right, a tinge of Rule 11 in the district court's order, although it's based on 1927. And I'm trying to figure out what overlap there is between those two. Yes, Your Honor, they are, they're just two different approaches to looking at misconduct. Rule 11 on its face has very specific procedures that require you to give notice and if you get a safe harbor if you withdraw after receiving that notice. That kind of give and take doesn't exist in the text of 28 U.S.C. Section 1927. As a matter of fact, this court teased out some of the dynamic that Your Honor is talking about in Rule 11 in Huggins versus Loder, Lark, and Hunter, that's 39 F. 4th, 1342, and specifically goes into the fact that under Rule 11 it has a construct to it, an inherent trigger that you have, so that the beginning of the proceedings of triggering the notice of a draft motion and the filing of it are very important. Whereas in 28 U.S.C., the only standard is that the court has to find that there was unreasonable and excessive proceedings that multiplied, excuse me, unreasonable and vexatious conduct that costs sought in sanction were related to the excess proceedings. So it's just a different way of looking at it and certainly there are going to be parts of Rule 11 case law that may be helpful to the court in determining whether something, you know, whether there was a path paved with truth to judgment or not, but it's a different analytical framework and just based on the statutory language. Yeah, here's a concern I have that is directed towards that. So, I mean, it looks like the district court's order to me was more of a Rule 11 analysis of the complaint and then, I don't think Rule 11 applies to interrogatory responses, but sort of in Rule 11-y style response to, you know, I looked at these responses to the request for admission. Is that the right kind of analysis, do you think, under this statute? Because Rule 11 does have, as you say, it has standards that have to be met. It says you have to give notice and the opportunity to withdraw. I mean, it seems like if we apply that same kind of analysis to this statute, we're sort of just jumping over all that. Well, Congress and the crafters of the federal rules created two different alternate ways to look at it and Judge Middlebrooks, in his discretion, looked at 28 U.S.C. 1927. He knew that looking at... It wasn't his discretion to look at it. I mean, he couldn't look at Rule 11 because you hadn't followed the request for Rule 11 section. I mean, I guess that's my point. I mean, doesn't it defeat the purpose of Rule 11 and having those standards and requiring the opportunity to withdraw and all that stuff if after the case is over, you just say all that stuff that happened is Rule 11 sanctionable, so sanctioned under 1927? It's an interesting question, Your Honor. I'm not sure I would have thought of the creation of Rule 11 as somehow undermining the enforceability of a separate statute that's on the books. No, I guess I'm not saying undermining. I guess my point is it seems like the statute is directed... I think it goes to the multiplication of proceedings point. It seems like the statute is directed at something else than just the opposing party not liking what happens to them and thinking that it's all frivolous. It seems like it's directed at courts' time being wasted. Am I wrong about that? It's definitely about the courts' and I think the party's time being wasted, but it's also keyed to a finding of bad faith and what Judge Middlebrooks did is he said when you combine the weakness of the claim, how apparent these claims were weak, with this kind of discovery misconduct, that, excuse me, Your Honor, leads to an inference of bad faith and that is the proper analysis for the district court under the case law from 19... section 1920. So I just want to... on the multiplication, you know, the bad faith, I mean, I think that's... I'll just say that. I'll give that one to you. On the multiplication of proceedings point, though, I mean, it seems like you would suggest that it would be sufficient if he had filed this complaint and in your response to the motion to dismiss not immediately withdrawn it, that that would be sufficient to say multiplication of proceedings under 1927 because you filed a complaint without a good basis and then you didn't immediately withdraw it in response to our motion to dismiss. I mean, is that correct? It's an interesting hypothetical. It's not one I've thought a lot about because that's not what happened here, but I would concede that if Judge Middlebrooks had not found both the weak claim originally filed and all the gamesmanship of discovery, he may not have reached the conclusion that 1927 sanctions were merited. Now, what about the argument on Mr. Rothman's part that the reason why they eventually dismissed the case was because your client voluntarily rebranded or partially rebranded the product, that issue? Thank you, Your Honor. I'd like to address that actually because it's an excuse after the fact and nothing more. I could show you the cans today if Your Honors wanted to see them. They're in the record. They didn't change that much. Mr. Rothman admitted they didn't change that much, and when you look at the chronology, A, there's no sworn testimony of any kind. He didn't offer a declaration, didn't put into the record a witness that said we withdrew because of the change in the cans. If you look at what he did point to, he pointed to an article that came out six weeks before he withdrew those claims, and at the time he pointed us to that article, I wrote him two emails saying, no, no, no, that's a different product. That's the main Ashok product. We're talking about, you accused the accelerator product. It's a different product, and so that accelerator product, there was no plans to change, there was no announcement of anything related to the product at issue, and then finally, Your Honor, there was also the false advertising claim, and there was no withdrawal of the claim that the is thermogenic, so it did not affect the false advertising claim, one iota, even if you give the plaintiff's counsel credence for the story about the trade dress. Okay. Thank you very much, Mr. Hogan. Thank you, Your Honors. Your Honors, again, regarding the order setting the hearing, Mr. Hogan stated at the end of that order, it stated that, clearly, an attorney threatened with 1927 sanctions is entitled to a hearing. Again, there was no withdrawal of the claim, and so there was no withdrawal of the looking at character over title. The sanctions motion did not delineate any of Mr. Rothman's specific behavior. But I don't see how you can raise your argument about there not being findings about Mr. Rothman individually as opposed to his client. That's a separate argument. I understand that argument, but I still don't get the due process argument. What other due process was he entitled to? The motion mentions 1927. The district judge sets out an order about the hearing and says, attorneys potentially liable under 1927 for sanctions are entitled to a hearing. Here's the hearing date, etc., etc. And Mr. Rothman at the hearing acknowledges that he's potentially on the hook. Like, what else did due process require? I understand the argument that the findings are insufficient, but that's a merit-based argument about the alleged deficiency of the order. What did due process require the district judge to do to protect Mr. Rothman's rights? Your Honor, hold on one. So, due process requires that an attorney or party be given fair notice that his conduct may warrant sanctions and the reasons why. And that's from Meraz, 65 F. 3rd, 1567, 11th Circuit. So, if there are no allegations in the motion as to Mr. Rothman's behavior, then what is he on notice of? He's only on notice of allegations against Celsius. Think about- He never made that argument to the district court. Like, at the hearing, that would have been an argument you would have made to the district court judge. Like, judge, this motion is based exclusively and only on conduct that my client undertook. It says nothing about me individually. And so, to the extent that there are sanctions available, and I don't think there are any, the motion has to delineate between the entity that's me personally. That argument wasn't made at the hearing. Your Honor- It's like, whatever the premise of Ashok's argument was, it was accepted and dealt with on that same basis. It's like, I'll take that argument and I'll show you why it's wrong. But there's no attempt to sort of splice individual liability for the lawyer versus the conduct of the client at the hearing. Your Honor, I think that puts Mr. Rothman in a pretty odd situation. In a hearing where the motion for sanctions only addresses the behavior of Celsius, and then to have him come through and voluntarily try to pass all of the blame to his client, who he's actually defending. He's there defending Celsius against sanctions. 1927 was noted in the motion, but again, almost like an afterthought, and the actual content of the motion only focuses on Celsius' behavior. So for them, so for him to be there as an advocate for Celsius, and then to turn against them, that just would not have worked, Your Honor. Turning against them necessarily, that's just making it try in an abundance of caution for Mr. Rothman to be very clear about his status in this proceeding. Is he indeed representing just Celsius, or does he have to be concerned with himself, which means he might have to separate himself. It doesn't mean that he would be throwing them under the bus, especially where it was the police who decided to plead their sanctions motion as it was pled, and they brought the motion, and they had the burden of proof. May I continue my time? Yes, you can wrap up. Okay, so just one more thing I wanted to address. Mr. Hogan stated how Mr. Rothman failed to place evidence on the record to address these issues, and I would say that likewise, Mr. Hogan, who had the burden of proof, did not address these issues with evidence. The motion was, the 7.3 motion was unverified as required by the rules. It did have affidavits as to qualifications of attorneys and the amount of time spent in the hourly rate, and it did attach the discovery that was subject, but there are a lot of allegations in the motion, again, against Celsius, and that motion is unverified, and I believe the purpose of the local rule having the motion itself be verified is for that very reason. So, there was no evidence presented by the party that had the burden of proof. So, again, why would Mr. Rothman then present evidence to counter that when there were no allegations about his behavior? All right, Mr. Dial, thank you very much. Thank you both. Thank you, your